IN THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS.

MARCH TERM, 1888.

31   1
53   500

ISAAC MEREDITH, Respondent, v. MUNSON M. WILKIN-
SON, Defendant; WALTER S. WILKINSON *et al.*,
Interpleaders, Appellants.

### St. Louis Court of Appeals, May 8, 1888.

1. EVIDENCE—ADMISSIONS.—In a controversy about the alleged fraud-
ulent transfer of property, it is not admissible to prove statements
made by the vendor to a third person, not in the presence of the
vendees, affecting the title of the vendees, after the purposes of
the conspiracy, if any, have been accomplished. Nor are such
statements by the vendor, when made after the transfer, with
possession, admissible on general principles, to affect the title of
the transferee.

2. PRACTICE—INSTRUCTIONS.—An instruction may omit an element
proper to be considered in the respective rights of the parties, and
yet there will be no error if such element be clearly supplied in
other instructions given.

3. PRACTICE—INSTRUCTIONS—USE OF THE WORD "GROSSLY."—There
is no error in the use of the word "grossly" in an instruction
which declares that the amount of a surety's responsibility must
not be "grossly inadequate" to the value of the property trans-
ferred for indemnity of the suretyship.

VOL. xxxi—1                                    ( 1 )

4. PRACTICE—OPENING AND CLOSING.—The right to open and close the argument may be awarded in the sound discretion of the court, and error is not assignable thereof, except in cases of manifest abuse or prejudice.

APPEAL from the Perry Circuit Court, HON. JAMES D. Fox, Judge.

*Reversed and remanded.*

E. & W. ROBB, for the appellants:    The verdict is so utterly at variance with common sense, so opposed to the weight of evidence, so against the manifest truth of the matter, so opposed to the law, even as declared by the trial court, that it must have been the result of caprice, prejudice, passion, or some other cause other than a conviction that appellants acted in bad faith in purchasing the property, and it should not be permitted to stand. *Spohn v. Railroad*, 87 Mo. 74 ; *Whitsett v. Ransom*, 79 Mo. 258 ; *Garrett v. Greenwell*, 92 Mo. 120 ; *Rothchilds v. Railroad*, 92 Mo. 91 ; *Baker v. Stonebraker's Adm'r*, 36 Mo. 345 ; *Price v. Evans*, 49 Mo. 396 ; *Caldwell v. Smith*, 88 Mo. 44.   And in this view the testimony should be considered in the light of the following proposition of law :   That when all the facts bearing upon the question of the intent of a transaction will as well consist with honesty as with dishonesty and fraud therein, the court ought not to find the same to be corrupt and fraudulent; the proof of the fraud should be perfectly satisfactory. *Dallam v. Renshaw*, 26 Mo. 533 ; *Hausmann v. Hope*, 20 Mo. App. 193 ; *Rumbolds v. Parr*, 51 Mo. 592 ; *Page v. Dixon*, 59 Mo. 43 ; *Henderson v. Henderson*, 55 Mo. 534 ; *Funkhouser v. Lay*, 78 Mo. 462 ; *Lennox v. Harrison*, 88 Mo. 491 ; *Jones v. Talbot*, 4 Mo. 279 ; *Muenks v. Bunch*, 90 Mo. 500 ; *Priest v. Way*, 87 Mo. 16.   The court erred in admitting the testimony of John C. Schudy, on behalf of plaintiff, as to the declarations of Munson M. Wilkinson.   Declarations of the grantor made after the sale was completed and interpleaders had taken possession

of the property, not made in the presence or hearing of either of them, are mere hearsay and incompetent to invalidate the title of his grantee. *Albert v. Besel,* 88 Mo. 150 ; *Gordon v. Ritenour,* 87 Mo. 54 ; *Gutzweiler v. Lackmann,* 39 Mo. 91 ; *Ladd v. Couzins,* 35 Mo. 513 ; *Holmes v. Braidwood,* 82 Mo. 610 ; *Stewart v. Balls' Adm'r,* 35 Mo. 202 ; *Worley v. Watson,* 22 Mo. App. 546. Nor is the testimony of said witness admissible on the theory that there was a conspiracy, for the following reasons : (1) Because there was no conspiracy proven, and the act or declaration of one of several charged with entering into a conspiracy is inadmissible to prove the conspiracy or common design. (2) Because the declarations testified to were not made in furtherance of and in the prosecution of the conspiracy charged and while it was in *fieri.* (3) Because the conspiracy charged was in the execution of the bill of sale and the sale and delivery of the property, and it is proven and admitted in plaintiff's answer that the bill of sale was executed and the property sold and delivered on December 1, 1886, and the declarations testified to have been made to Schudy were made after the time Munson Wilkinson left home, which was on December 7, and consequently they were made after the completion or consummation of the act charged ; and in this last view, even had there been a conspiracy proven in the execution of the bill of sale and the sale and delivery of the property, the declarations would be inadmissible, because the acts or declarations of one conspirator are not admissible against another, when the common enterprise is ended, whether by accomplishment or abandonment. *State v. McGraw,* 87 Mo. 161; *State v. Fredericks,* 85 Mo. 145; *State v. Reed,* 85 Mo. 194 ; *State v. Barham,* 82 Mo. 67 ; *Laytham v. Agnew,* 70 Mo. 48; *Boyd v. Jones,* 60 Mo. 454; *Weinrich v. Porter,* 47 Mo. 293; *State v. Duncan,* 64 Mo. 262; *State v. Daubert,* 42 Mo. 239; *State v. Ross,* 29 Mo. 32, 50, 51 ; *Wright v. Cornelius,* 10 Mo. 174 ; *Weinstein v. Reid,* 25 Mo. App. 41; *Nasse v. Algermissen,* 25 Mo. App.

186. The declarations were not made in regard to the execution of the bill of sale and were inadmissible. *Boyd v. Jones*, 60 Mo. 454, 471. For the reasons given in the foregoing proposition the court erred in refusing instruction number seven, asked by interpleaders; or to say the very least, the court erred in refusing instruction number eight, asked by them. *Holmes v. Braidwood*, 82 Mo. 610. The court erred in giving instructions one, two, and three, for plaintiff, in not recognizing the right of a debtor to prefer one creditor to another. The rule is well settled that a debtor has the right to prefer a particular creditor over his other creditors, and this implies the right of acceptance, even if in so doing it shall hinder and delay other creditors, and it is no objection to an assignment made to pay a *bona-fide* debt that the intent of the parties was to postpone or hinder other creditors. *Singer v. Goldenberg*, 17 Mo. App. 549; *Shelley v. Boothe*, 73 Mo. 77; *Lane v. Ewing*, 31 Mo. 75; *Holmes v. Braidwood*, 82 Mo. 610; *Saddlery Co. v. Urner*, 24 Mo. App. 534; *Cordes v. Straszer*, 8 Mo. App. 61; *Greely v. Reading*, 74 Mo. 309. Instruction number four, given for plaintiff, is meaningless and misleading. The instruction should have defined what was meant by the expression— "if the amounts of their debts and the amounts necessary to indemnify them as sureties were grossly inadequate" to the value of the property transferred. *Mueller v. Ins. Co.*, 45 Mo. 84; *Wiser v. Chesley*, 53 Mo. 547; *Edelmann v. Transfer Co.*, 3 Mo. App. 503; *McPheeters v. Railroad*, 45 Mo. 26; *Boocher v. Nassee*, 75 Mo. 383; *Speak v. Ely & Walker*, 22 Mo. App. 122. The errors complained of in the instructions given for plaintiff were not cured by the giving of other correct instructions, or the giving of correct instructions for the other party, since it cannot be determined whether the jury was influenced by the erroneous or the valid instruction. *Jones v. Talbot*, 4 Mo. 279; *Nasse v. Algermissen*, 25 Mo. App. 186; *State v. Clevenger*, 25 Mo. App. 653; *Thomas v. Babb*, 45 Mo. 384; *Frederick*

*Allgaier,* 88 Mo. 598; *Goetz v. Railroad,* 50 Mo. 472; *Buel v. Transfer Co.,* 45 Mo. 562; *Otto v. Bent,* 48 Mo. 23; *Binbeutel v. Nauert,* 2 Mo. App. 295. The court erred in allowing plaintiff the opening and closing in the case. *Burgert v. Borchert,* 59 Mo. 80, 85; *Spooner v. Ross,* 24 Mo. App. 599; *Nolan v. Deutsch,* 23 Mo. App. 1.

JOHN V. NOELL and JOHN H. NICHOLSON, for the respondent: An appellate court will not disturb a verdict on the ground merely that it is against the weight of evidence unless it can be seen that the preponderance is so great as to imply some gross partiality or some prejudice or misconduct on the part of the jury. *Spohn v. Railroad,* 87 Mo. 84; *Whittsett v. Ransom,* 79 Mo. 260; *Baker v. Stonebraker's Adm'r,* 36 Mo. 345; *In re Bowman,* 7 Mo. App. 569; *Robert v. Eyerman,* 7 Mo. App. 592; *Brown v. Railroad,* 13 Mo. App. 462; *Greffet v. Dowdal,* 17 Mo. App. 280, 283; *O'Connor v. Standard Theatre Co.,* 17 Mo. App. 675; *Walker v. Owens,* 25 Mo. App. 587; *Townsend v. Gates,* 25 Mo. App. 336; *Burgert v. Borchert,* 59 Mo. 80. The acts and declarations established at the trial were sufficient *prima-facie* proof of conspiracy to justify the action of the court in permitting the testimony of the witness Schudy to go to the jury for their consideration on the whole case. *Commonwealth v. Scott,* 123 Mass. 222; s. c., 25 Am. Rep. 81; *Commonwealth v. Brown,* 14 Gray, 419; *Miller v. Barber,* 4 Cent. Law Jour. 177-8; *People v. Parish,* 4 Penn. 153; *Sweat v. Rogers,* 6 Tenn. 118; *Page v. Parker,* 40 N. H. 62. In order to ascertain whether the acts and declarations of the grantor are admissible, it devolves upon the court to determine for itself whether other facts are sufficiently proved and whether these facts are *prima-facie* sufficient proof that the parties have combined to effect the fraudulent design. If it finds that there is such proof, it admits the declarations as fit evidence to be considered by the jury in forming their judgment on the whole

case, and who may, nevertheless, negative the combination. *Burke. v. Miller*, 7 Cush. [Mass.] 547; Bump on Fraud. Conv. [2 Ed.] 567; *State v. Ross*, 29 Mo. 32, 51; *Boyd v. Jones*, 60 Mo. 454. Generally the declarations of a grantor, made after the execution of his deed, cannot be made use of to defeat the deed. There are, however, several exceptions to this general rule, and one exception is that, where the parties to the instrument have entered into a common scheme to hinder, delay, or defraud the creditors of the grantor in the deed, and the declarations are made by the grantor while engaged in the prosecution of that plan. *Boyd v. Jones*, 60 Mo. 454; *Gardner v. Preston*, 2 Day, 205; see note in 2 Am. Dec. 95; *Bank v. Russell*, 50 Mo. 531, 534; *Cordes v. Straszer*, 8 Mo. App. 61; *Holmes v. Braidwood*, 82 Mo. 610; *Weinrich v. Porter*, 47 Mo. 293; 1 Wharton Law of Evidence [2 Ed.] sec. 259; Bump on Fraud. Conv. [2 Ed.] 566. It was competent for the plaintiff to put in evidence any acts and declarations of the several conspirators in furtherance of the common purpose of the conspiracy, either before or after the execution of the bill of sale. *Commonwealth v. Brown*, 14 Gray, 419; *Commonwealth v. Scott*, 123 Mass. 222; *Kimmel v. Geeting*, 2 Grant [Pa.] Cas. 125. Neither the word "grossly" nor the word "inadequate," as used in said instruction, has any technical meaning different from its ordinary signification, and both being common English words, whose meaning is well defined in the ordinary dictionaries of the language, and well understood by all understanding said language, there was no necessity for defining either of said words in the fourth instruction mentioned. *Johnson v. Sullivan*, 23 Mo. 474, 481; *Berry v. Wilson*, 64 Mo. 164, 165; *Steinkamper v. McManus*, 26 Mo. App. 51. Instructions one, two, and three, given for plaintiff, did not negative the right of a debtor to prefer one creditor to another, and on the contrary, instructions two and three, given for interpleaders, expressly asserted this right to the fullest extent permitted by the law. The party on whom the

burthen of proof rests is entitled to open and close the case. *Porter v. Jones*, 52 Mo. 403; *Harvey v. Heirs of Sullens*, 56 Mo. 372; *Tibeau v. Tibeau*, 22 Mo. 77; *Reichard v. Ins. Co.*, 31 Mo. 518.

THOMPSON, J., delivered the opinion of the court.

The plaintiffs sued out two successive attachments against the property of Munson M. Wilkinson. Both were levied upon certain personalty claimed to be the property of the defendant, but found in the possession of Walter S. Wilkinson and Benjamin F. Wilkinson, who were partners doing business under the name of Wilkinson Brothers. These latter interpleaded for the property, claiming it by virtue of an absolute bill of sale, by which defendant had undertaken to convey it to them to satisfy certain indebtedness alleged to be due to them from him, and also to indemnify them as sureties on certain promissory notes of his. The plaintiff answered the interplea charging in substance that the conveyance to the interpleaders was contrived between them and the defendant for the purpose of hindering, delaying, and defrauding the creditors of the latter. The issue was tried by a jury, who returned a verdict for the plaintiff and against the interpleaders, upon which judgment was entered that they take nothing by their interplea; and from this judgment they now appeal to this court. We shall notice the principal errors which they assign, not noticing several which do not seem to require any observation.

I. The first is that "the verdict is so utterly at variance with common sense, so opposed to the weight of the evidence, so against the manifest truth of the matter, so opposed to the law, even as declared by the trial court,—that it must have been the result of caprice, prejudice, passion, or some other cause other than a conviction that appellants acted in bad faith in purchasing the property, and it should not be permitted to stand." We are of opinion that this assignment of

error is not well taken. The verdict is plainly supported by substantial evidence, and is not opposed to the law as declared by the court.

II.   After defendant had transferred the property in controversy to the interpleaders and delivered the possession of it to them, he started for California.   On his way thither he stopped at St. Louis, and called upon the firm of Brockmeyer & Sevil, and there had a conversation with Mr. Schudy, who was employed in that house, and represented to him that he (Schudy) was · to have half of his wheat crop the coming year, and that another man was to have the other half ; that he had left word with Walter Wilkinson (one of these interpleaders) that it was to be fixed in that way ; and that he asked for a loan of one hundred dollars, upon the strength of Brockmeyer & Sevil getting half of his wheat crop.   This testimony was objected to by the interpleaders, on the ground that the declarations or statements of the vendor of the interpleaders, made after the sale and delivery of the property to them, not in their presence and hearing, or in the presence or hearing of either of them, were not competent to affect their rights. The court overruled this objection, and the interpleaders excepted.   This ruling was plainly erroneous.   Assuming that a sufficient foundation had been laid for the introduction of the evidence of the statements of the defendant on the ground that a conspiracy to defraud the creditors of the defendant had been shown to exist between the defendant and the interpleaders,—yet the evidence was inadmissible upon plain principle, because it was not made while the conspiracy was subsisting, but was made after it had accomplished its purpose and had come to an end.   The acts or declarations of a co-conspirator, made after the common enterprise has come to an end, whether by accomplishment or abandonment, are not admissible in evidence against the others.   *State v. Ross*, 29 Mo. 32 ; *Laytham v. Agnew*, 70 Mo.  48 ; *State v. Barham*, 82 Mo. 67, 73 ; *State v. Fredericks*, 85 Mo. 145 ; *State v. Reed*, 85 Mo. 194 ; *State*

*v. Duncan*, 64 Mo. 262 ; *State v. McGraw*, 87 Mo. 161 ; *Weinstein v. Reed*, 25 Mo. App. 41, 46 ; *Nasse v. Algermissen*, 25 Mo. App. 186, 189.  In conformity with this principle, there is the further rule that after a vendor has parted with his possession he has no more power to affect the title of his vendee, either by his acts or declarations, than a mere stranger has, but that any declarations which he may thereafter make are hearsay evidence merely, and hence not admissible.  *Steward to use v. Thomas*, 35 Mo. 202 ; *Gutzweiler's Adm'r v. Lackmann*, 39 Mo. 91 ; *Weinrich v. Porter*, 47 Mo. 293.  An exception to this rule has been admitted in the case where the vendor remains in possession after the sale, in which case his declarations are receivable, as against his vendee, as a part of the *res gestae*, for the purpose of showing that the sale was made in fraud of his creditors.  *Boyd v. Jones*, 60 Mo. 454, 471.  But this exception does not cover the evidence which the court let in, in the present case; because, although the evidence tended to show that the defendant did remain in possession of some of the property included in the bill of sale, namely, the household goods,—yet he did not remain in the possession of the property which the plaintiff attached in the hands of the interpleaders, and which is the property in controversy. It is admitted that he transferred the possession of this property to them, and that they were in possession and he absent from the state, at the time when it was attached.

III.  For the reasons above given, the court also erred in refusing the seventh and eighth instructions tendered by the interpleaders, one of which sought to rule out and the other to limit the effects of the foregoing evidence.

IV.  The error of admitting the foregoing evidence was increased by the giving of the following instruction at the request of plaintiff:

"8.  The court instructs the jury that if, from a full and fair review of all the facts and circumstances in evidence, they believe that defendant and interpleaders

combined or conspired together, either to hinder, delay or defraud the creditors of defendant, or any of them, then all the declarations and acts of either the defendant or interpleaders, made and done in furtherance of said conspiracy to hinder, delay or defraud, though made in the absence of the other party or parties to such conspiracy, may be taken into consideration in determining whether said bill of sale was executed by defendant and accepted by interpleaders with the intent to hinder, delay or defraud the creditors of defendant, or any of them."

This instruction did not discriminate between the declarations of the co-conspirators made *dum fervet opus*, and declarations of one of them, not either of the interpleaders herein, and not a party to the issues on trial, made after the conspiracy had ended. It was, therefore, tantamount to telling the jury that they were at liberty to consider the evidence of Schudy and hence tending to increase the prejudice created by the admission of that evidence.

V. We see no other error in the instructions of which the interpleaders can complain. Taken as a whole, with the exception above stated, they seem to have submitted the issue fairly to the jury, and in a manner approved by the decisions of the Supreme Court. So far as the first, second, and third instructions given for the plaintiff failed to recognize the right of a debtor to prefer one creditor to another, they were supplied by other instructions which were given; and these instructions, read in connection with the other instructions, do not present a case of contradictory instructions. In the fourth instruction given for the plaintiff, the jury were told that if the amount of the debt which the defendant owed the interpleaders and the amounts necessary to indemnify them as sureties, were "grossly inadequate to the value of the property transferred by said bill of sale to interpleaders, at the time of the execution of said bill of sale, such fact, together with all other surrounding circumstances, may be taken into consideration

by the jury in determining whether such sale was
fraudulent," etc. Exception is taken to the use of the
word "grossly." We think this is a very strained crit-
icism ; for although in some cases, especially of negli-
gence, the use of the word "gross" in an instruction
without defining it has been condemned, yet this
instruction merely submitted to the jury the legal prop-
osition that, where a debtor turns over his property to a
particular creditor to pay or secure him, if the value of
the property turned over is grossly disproportionate to
the debt intended to be paid or secured, this is evidence
from which an intent to defraud creditors may be
inferred. In such a connection, "grossly" means no
more than *very* or *very greatly*. It is an ordinary word,
which every man is presumed to understand, and we do
not think that it is error to use it in this connection
without attempting a specific definition. Courts do not
generally assist juries, but rather trammel and embar-
rass them, when they attempt to define what is already
sufficiently plain. In this case, the evidence tended to
show that there was a wide disproportion between the
amount of indebtedness and the contingent liability
intended to be paid and secured, as claimed by the inter-
pleaders, by the transfer of this property and the value
of the property itself ; and whether this was a gross dis-
proportion within the rule was a question of fact for the
jury.

VI. For the reasons stated more at length in the
recent case of *Elder v. Oliver*, 30 Mo. App. 575, we must
hold that no error available to the interpleaders was
committed in awarding to the plaintiff the right to open
and close. The matter is one resting in the sound
discretion of the trial court, the exercise of which discre-
tion is not assignable for error except in cases of mani-
fest abuse or prejudice.

For the errors above pointed out, the judgment will
be reversed and the cause remanded. All the judges
concur.