## CLEMENTINE HELLMAN v. WILLIAM SOMERVILLE et al., Appellants.

### Division Two, May 19, 1908.

1. **STRIKING OUT CROSS-BILL: No Interest.** Where defendant's cross-bill to plaintiff's bill in equity to cancel certain conveyances on the ground of fraud, to the end that all clouds upon plaintiff's paper title may be removed, expressly admits that the defendants have no interest in the property, the cross-bill should be stricken out.

2. ———: ———: **Counterclaim: New Matter.** The statute, authorizing a counterclaim or cross-bill or any other defense the defendant may have to the cause of action alleged in the petition, does not contemplate that a defendant, upon being sued, may on the one hand disclaim any interest in the subject-matter of the suit, and on the other hand inject into the proceedings an entirely new cause of action predicated upon a subject entirely foreign to the one upon which the plaintiff's cause of action is based.

3. ———: ———: ———: **In Behalf of Others.** Where the defendants who file the cross-bill have no interest in the property sued for, and the other defendants have no interest in the matters made the subject-matter of the cross-bill, the cross-bill should be stricken out.

4. ———: **Different Parties.** Where the cross-bill makes the acts of plaintiff's testator and his agents the basis of the relief prayed for, even though those acts may have imposed a liability upon the testator and his estate, yet the cross-bill should be stricken out, for those acts impose no such burden upon plaintiff, who is simply a beneficiary under the will, and as to the transaction complained of in the cross-bill is a third and independent party, in no wise connected with the action upon which the cross-bill is predicated.

5. **DEPOSITIONS IN ANOTHER CASE: Admissions: Conspiracy to Defraud.** The petition in plaintiff's suit to cancel certain conveyances on the ground of fraud, and as being a cloud upon the title, charged that each of the several conveyances constituted a step in a scheme and design on the part of the principal defendants to fraudulently place the property beyond the reach of their creditors, and that the other defendants had knowledge of such fraudulent purpose and knowingly participated therein. *Held*, that admissions made in the depositions of the principal ·defendants in another suit by another plaintiff against them were admissible, not only against the several defendants making them, but, it appearing from testimony outside of the admissions embraced in the depositions that the other defendants knowingly acted in concert with them to assist them in hindering, delaying and defrauding their creditors, they were admissible against them also.

6. **FRAUD: Cancelling Deeds: Sufficiency ·of Evidence.** The evidence in this case is reviewed and *held* sufficient to sustain the decree of the trial court cancelling and setting aside several deeds as having been made by the principal defendants and by others through their procurement for the purpose of hindering, delaying and defrauding their creditors.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. R. Kinealy*, Judge.

AFFIRMED.

*Benj. J. Klene* for appellants.

(1) 1. The facts disclosed by the record show such a meagre conception of equity by the plaintiff that no chancellor should seriously consider her bill. She is unwilling to do equity and hence should receive no aid in chancery. Ruppel v. Mo. Guarantee S. & B. Asso., 158 Mo. 613; Corby v. Bean, 44 Mo. 379; Kline v. Vogel, 90 Mo. 239; Woodard v. Mastin, 106 Mo. 324. 2. It was error on the part of the trial court to refuse defendants the right to show by testimony the unwillingness of plaintiff to do equity. Steckman v. Harber, 55 Mo. App. 71; Woodard v. Mastin, 106 Mo. 324. (2) Plaintiff failed by competent and convincing

proof to show a scheme to hinder and defraud plaintiff, for the following reasons: (a) Defendant, William Somerville's testimony in this case, was given in the case of Bredell v. Somerville et al., and read here as an admission against him. It cannot, therefore, be considered against any other defendant in the case. (b) The testimony of Hattie P. Somerville read in this case as an admission against her was given by her in the case of Bredell v. Somerville et al. It cannot, therefore, be considered against any other defendant in the case. (c) The testimony of Laura P. Henderson, read in evidence in this case as an admission against her was given by her in the case of Bredell v. Somererville et al. It cannot, therefore, be considered against any other defendant in the case. (d) The testimony of Horatio N. Henderson, read in evidence in this case as an admission against him, was given by him in the case of Bredell v. Somerville et al. It cannot, therefore, be considered against any other defendant in this case. (e) With the testimony of each of these defendants limited to an admission against their respective selves, there remains no basis for the decree of the lower court, exclusive of other considerations. (3) The court erred in sustaining the demurrer to the cross-bill of the defendant Somerville. 1. Because the demurrer was a general one alleging insufficient facts to constitute a cause of action, this ground of demurrer the court declined to pass upon, but sustained the demurrer because the cross-bill was held not germane to the original bill. 2. Because the ruling of the court in sustaining said demurrer is in direct conflict with the provisions of the Code of Civil Procedure. R. S. 1899, sec. 605; Bliss on Code Pleading (3 Ed.), secs. 126 and 374. 3. Because the action stated in the petition is one founded on contract, and the cross-bill is a statement of a cause of action arising

out of the transactions set forth in the bill as the foundation of her suit. R. S. 1899, sec. 605; Bliss on Code Pleading (3 Ed.), sec. 372.  4.  Because the cause of action of plaintiff arising, as it does, out of contract, may be met by any other cause of action also arising on contract when stated in a cross-bill.  R. S. 1899, sec. 605; Bliss on Code Pleading (3 Ed.), sec. 377; McElroy v. Ford, 81 Mo. App. 500.  5.  Because the court, by its action in sustaining said demurrer, has denied the defendants Somerville their statutory right to set forth, by their answer, as many defenses and counterclaims as they have, whether they be such as, before the enactment of the Code of Civil Procedure, were denominated legal or equitable, or both. R. S. 1899, sec. 605; Bliss on Code Pleading ( 3 Ed.), sec. 383.  6.  And besides all this, the cross-bill stated facts constituting a good cause of action entitling the defendants Somerville to redeem from the foreclosure sale of the Market street property.  Frank v. Fraylor, 16 L. R. A. 115; Orrick v. Durham, 79 Mo. App. 74; Clark v. Bank, 57 Mo. App. 277; Brown v. Kirk, 20 Mo. App. 524.  (4) Hattie P. Somerville, having received no benefit by reason of her signature to the $18,500 note of her husband, was a surety from the beginning.  Barrett v. Davis, 104 Mo. 549; McCullon v. Boughton, 132 Mo. 601; Propes v. Propes, 171 Mo. 418; Johnson v. Franklin Bank, 173 Mo. 171; White v. Smith, 174 Mo. 186; Higgins v. Harvester Co., 181 Mo. 308; Barkhoefer v. Barkhoefer, 93 Mo. App. 373; Bruege v. Bedard, 89 Mo. App. 543.  (5) Blair's assumption of the Somerville deed of trust and debt secured by it changed the relation of the Somervilles from principals to sureties, and Blair became the principal debtor.  Orrick v. Durham, 79 Mo. 174; Smith v. Davis, 90 Mo. App. 530; Nelson v. Brown, 140 Mo. 580; Pratt v. Conway, 148 Mo. 291; Crone v. Stinde, 156 Mo. 262; Laumeier v. Hallock, 103 Mo. App. 116.

(6) Whether the case of Mrs. Somerville alone be considered as an original surety, or whether both Mr. and Mrs. Somerville be considered as sureties under the assumption of their debt by Blair, in either case plaintiffs Somerville, one or both, are entitled to a decree declaring their right to redeem and be subrogated to the collaterals held by Mrs. Hellman upon payment of the debt. The right of redemption involves the right of subrogation. MacKenna v. Trust Co., 3 L. R. A. (N. S.) 1071; Taylor v. Tarr, 84 Mo. 420; Orrick v. Durham, 79 Mo. 174; Dwyer v. Rohan, 99 Mo. App. 133; Clark v. Bank, 57 Mo. App. 277; Bank v. Reed, 54 Mo. App. 94; Fisher v. B. & L. Assn., 59 Mo. App. 430; Ferguson v. Carson, 86 Mo. 673; Roberts v. Bartlett, 26 Mo. App. 611; Sheldon on Subrogation, sec. 24; Woodbury v. Swan, 58 N. H. 383. (7) From the time of the Blair assumption of the deed of trust it was the duty of Hellman to recognize Blair as the principal debtor, and the Somervilles as his sureties, in all their dealings in relation to the indebtedness secured by the deed of trust. He had no choice to do otherwise. In the cross-bill it is alleged he actually treated Blair as a principal. Smith v. Davis, 90 Mo. App. 539; Regan v. Williams, 88 Mo. App. 577; Pratt v. Conway, 148 Mo. 296. And it makes no difference that the purchaser assuming is not the immediate grantee of the makers of the note, but one more remote. Crone v. Stinde, 156 Mo. 262, overruling Hicks v. Hamilton, 144 Mo. 495. (8) But there is another principle through which we may just as certainly work out a dominating lien or right of a higher order or priority in the defendants Somerville as compared with the rights of plaintiff. This is through the doctrine of the vendor's lien retained by the Somervilles for unpaid purchase price. Henderson, their immediate grantee, was only a conduit of title, the beneficial interest remaining in the Somervilles. Orrick v. Dur-

ham, 79 Mo. 174; Bank v. Edwards, 84 Mo. App. 462; Phillips v. Schall, 21 Mo. App. 38. (9) In cases of sales for inadequate consideration the courts seize upon slight incidents, which, added to the inadequate price, impel them to decree a redemption from a mortgage sale, among such instances are the following: .1. Inadequate price coupled with sale in bulk. Miller v. Montgomery, 131 Mo. 595; Kelly v. Hart, 61 Mo. 463. 2. Inadequate price and inclement weather. Bank v. Richardson, 156 Mo. 270. 3. Inadequate price and absence of trustee from sale. Vail v. Jacobs, 62 Mo. 130. 4. Inadequate price and unusual hour of sale. Stoffel v. Schroeder, 62 Mo. 147; Miller v. Montgomery, 131 Mo. 595. 5. Inadequate price and failure to give customary notice to debtor in addition to proper publication. Hardware Co. v. Building Co., 132 Mo. 457; Sheridan v. Nation, 159 Mo. 27. 6. Mistake or inadvertence coupled with inadequate price. Kelly v. Hurt, 61 Mo. 643; Cole County v. Madden, 91 Mo. 585; McKee v. Logan, 82 Mo. 528; Dunn v. McCoy, 150 Mo. 566. 7. Friendly disinterestedness plausibly paraded, inadequate consideration and plaintiff's oppressive and inequitable conduct were held grounds for setting aside a sale under a deed of trust. Swon v. Stevens, 143 Mo. 398. 8. Inadequate price, and lulling into security by promise to take no step or act without notice, which promise was disregarded, are proper grounds for setting aside a sale. Clarkson v. Creely, 35 Mo. 95, 40 Mo. 114. 9. It is proper to show promises to redeem after sale, even though made subsequent to sale. Byrne v. Carson, 70 Mo. App. 132; Parketon v. Schlueter, 145 Mo. 55. (10) Our tender to pay is good. Ailey v. Barnett, 134 Mo. 313; Kline v. Vogel, 90 Mo. 239; Axman v. Smith, 156 Mo. 286.

*H. A. & H. H. Haeussler* and *Geo. C. Hitchcock* for respondent.

(1) From the undisputed evidence of Mechin, Clara C. Pullis, Hattie P. Somerville and Horatio N. Henderson, plaintiff was bound to recover without the admissions of parties contained in depositions at Bredell trial. (2) If evidence in this case does not make convincing proof of a scheme in Somerville to keep possession of the Washington avenue property here in question, and thus defraud their creditors, no evidence ever did do so in any case. It is glaring. (3) As to the cross-bill, it had no relation whatever to the property in question in this case. The Somervilles who filed same admitted that they had no interest whatever in either property sued for, or in the Market street property. They have had their day in court when sued and, moreover, have failed to do any act entitling them to consideration. The other defendants who really are interested filed no cross-bill with their answer. They only want the conveyance to Kalb held good, subject to the deed of trust she gave.

FOX, P. J.—This cause is now pending in this court upon appeal from a decree and judgment of the St. Louis Circuit Court in favor of plaintiff. It is an action to cancel certain conveyances to property on Washington avenue in the city of St. Louis and to decree possession in plaintiff, and for certain injunctive and other relief. The cause of action is stated in one count of the petition; however, it was tried without objection on that ground.

The plaintiff was a judgment creditor of defendants William Somerville and Hattie P. Somerville. As such she had the property in dispute on Washington avenue sold under execution against the Somervilles as their property, and at such sale became the purchaser of such property for the sum of one hundred dollars.

The petition charges that in October, 1895, William and Hattie P. Somerville executed their note to John A. Sickfort for $18,500, due in five years, with interest at the rate of six per cent, payable semiannually; that said note was indorsed and assigned to Louis M. Hellman; that thereafter, on November 20, 1900, there was paid thereon $10,857.04; that thereafter the said Hellman instituted suit for balance due, but died during pendency of suit; that in February, 1901, said suit was revived in the name of his executor and executrix, and in May, 1901, judgment was rendered against the Somervilles for $8,637.96; that the plaintiff, the widow of Hellman, became and was the owner of said judgment; that on execution being issued on said judgment and a sale thereunder, plaintiff purchased the property in suit and received a sheriff's deed therefor. The petition further charges that the property in dispute was acquired by William Somerville by deed from Frank H. Young and wife, January 19, 1895; that since such date the Somervilles have lived upon and had possession of the property; that on December 24, 1897, the said William Somerville conveyed said property to his wife, Hattie; that thereafter on April 16, 1901, the said Hattie, joined therein by her husband, the said William, conveyed the same to Laura P. Henderson, a sister of the said Hattie; that thereafter the said Laura, being joined therein by her husband, one Horatio N. Henderson, on or about January 1, 1901, did convey the said property to one Benigna G. Kalb, stenographer and wife of Frank Kalb of Columbus, Ohio; that the said Kalbs thereafter executed a deed of trust conveying said property to one Loevy, as trustee, to secure the payment of four notes, each for the sum of $2,750, and due respectively in one, two, three and four years from May 29, 1901, payable to the said Laura P. Henderson; that the said notes were assigned by the said Laura to Clara Pullis, a sister.

residing in the same house with her; that no taxes had been paid on the property for the years 1898 to 1903, inclusive. The petition then charges that all these several transfers were without consideration and were made for the purpose of covering up the property of the said Somervilles from their creditors and to hinder, delay and defraud their creditors, and that all of the parties had full knowledge of and participated in the fraud. The petition is lengthy but the foregoing is the substance thereof. The prayer of the petition is as follows:

"Wherefore, the plaintiff prays that the defendant, Benigna G. Kalb, may be enjoined and restrained from further conveying said premises to any other party. That said Clara Pullis be enjoined and restrained from in any manner negotiating or transferring said notes, so secured, and from foreclosing said deed of trust.

"That a receiver be appointed to take charge of said notes and property, pay the taxes thereon, collect the rents therefrom, and that upon trial herein a decree be entered, setting aside the conveyance of said premises so made by said Hattie P. Somerville and her husband to Laura P. Henderson; the conveyance of Laura P. Henderson and her husband to Benigna G. Kalb and Hannibal A. Loevy, as trustee. That said notes and deeds may be canceled and for naught held. That plaintiff recover the possession of said premises from the defendants, Hattie P. and William Somerville, free and discharged from said conveyances and deed of trust, and for such other and further relief as to the court may seem just and proper in the premises."

The two Somervilles by answer admit the several conveyances mentioned, but deny that they or any of them were or are fraudulent and constituted a part of a scheme to hinder, delay or defraud their cred-

itors.  They also deny that they had any interest in
the property at the time of the sheriff's sale, but aver
that if they had any interest therein, the price paid
by the plaintiff at such sale was so grossly inadequate
as to shock the moral sense and the court should hold
it invalid.  The answer lastly says:  "These defend-
ants further answering said petition say that the same
is wholly devoid of equity, and is predicated upon a
course of action and conduct by plaintiff and her tes-
tator which has produced a state of facts and condi-
tions oppressive to these defendants in the extreme;
that plaintiff's said petition is false in that it only
relates in part to transactions to which it refers; that
it recites credits on the principal note, without say-
ing that they were based upon payment, and without
showing the circumstances under which said credits
were made, and why; said petition leaves many things
to conjecture and inference, and was drawn in the
evasive, uncandid and vermicular manner in order to
obscure the inequitable and unconscionable conduct of
plaintiff and her testator and to avoid disclosing the
equities of these defendants.  Wherefore, plaintiff be-
ing unwilling to do equity, she should take nothing
by her petition.''

These defendants likewise filed a cross-bill in which
they aver that Louis M. Hellman died leaving a will
in which the plaintiff herein was residuary legatee.
That these defendants borrowed from or through Her-
man A. Haeussler, the sum of $18,500, executing their
joint note to John A. Sickfort, a clerk and employee
of Haeussler, due in five years and secured by deed
of trust on certain Market street property; that said
Haeussler was the trustee in said deed of trust; that
said loan was made on the basis of said property and
without reference to the individual responsibility of
the defendants; that the signature of Hattie P. Somer-
ville to said note was procured surreptitiously, without

consideration and after the delivery of the deed of trust; that said note is the same as the said principal note mentioned in the plaintiff's petition; that on December 2, 1899, these defendants sold said Market street property to Horatio N. Henderson, subject to the said deed of trust for $18,500; that Henderson, on August 21, 1900, sold and deeded said property, except sixteen feet and ten inches thereof, to one Robert F. Blair, which said Blair, in the deed accepted by him, assumed and agreed to pay the said $18,500 secured as aforesaid; that said Blair took possession and collected the rents until the sale under said deed of trust. The cross-bill then alleges that after giving the said $18,500 deed of trust the said William Somerville discovered that there was an alleged previous deed of trust for $5,500, and that to secure the said Hellman from any loss therefrom, he first gave a bond, signed by himself and one Gore, and assigned a note given by one Uhlenhuth for $5,000; that these were given to indemnify the said Hellman against loss, if any, by reason of said prior deed of trust, which was then in litigation; that thereafter the said Uhlenhuth note was returned to said defendants, but in lieu thereof they turned over to said Hellman 50 shares of stock in the Missouri Glass Company, of the value of $5,000, to be held for the same purpose; that thereafter these defendants defeated said alleged deed of trust for $5,500, and without expense or loss to said Hellman; and that thereupon they were entitled to their said stock aforesaid; that the said Haeussler, trustee for Hellman, has not returned the said stock, but claims to have sold it to said Hellman; that by reason thereof there has been a conversion of said stock by said trustee, Haeussler, for the benefit of Louis M. Hellman, and to his use, and to the use of his transferee by will, the plaintiff herein; that on August 20, 1900, the said Blair, having failed to pay the said note for

$18,500, the said Haeussler, trustee, at the request of Hellman, caused said Market street property to be sold and bought in for $10,000, less than one-third of its real value; that it was susceptible of division, but was sold in lump; that defendant, Hattie P. Somerville, was not aware of the sale, nor had she been notified by the trustee, as was customary; that at the time of said sale, William Somerville was absent from the city, but had left one Matthews to attend the sale and bid the amount of debt, interest and costs; that through mistake and inadvertence the said Matthews did not do so; that upon his return the said William Somerville was informed by Haeussler, the trustee, and also attorney for Hellman, that he, Somerville, would be permitted to redeem at any time when he got ready; that said promise was later renewed by said Haeussler, which said several promises included said stock as well as said real estate; that by reason of these facts defendants did not interpose any serious objections to the acts of Hellman and this plaintiff in relation to said property and the balance of said note; that Hellman and plaintiff collected in rents on the Market street property, after such sale, over $10,000; that notwithstanding the said promises to redeem, the said Hellman with Haeussler as his attorney brought suit upon and recovered judgment for the balance of said note in the sum of $8,637.96; that at and before the recovery of said judgment the said Haeussler promised that no execution should be issued on the said judgment; that said promises to redeem were not made in good faith, but to lull these defendants into security and to prevent them from taking steps to protect themselves; that Somerville relied upon said promises by reason of the fact that he and Haeussler were friends from boyhood. The cross-bill then avers the sale of the property for a nominal sum and the purchase thereof by the plaintiff, and adds an offer to pay whatever

may be due on the original note of $18,500, upon an accounting being held, which accounting should consider interest on the one side and rents and profits on the other, as well as the stock and its dividends, and further prayed the court that the said Blair be made a party and upon final hearing that they be permitted to redeem the Market street property; that the judgment be held as paid and the Washington avenue property be declared to be the property of Benigna G. Kalb, and for all other proper orders and decrees.

Upon motion this cross-bill was stricken out and error is assigned upon the action of the court in that respect.

The other defendants, except Loevy, filed a joint answer, in which they each aver the good faith and *bona fides* of the said several transfers of the Washington avenue property and asked that the sale and sheriff's deed to plaintiff be set aside and for naught held, and the same be canceled and the cloud upon the title occasioned thereby removed.

Defendant Loevy's answer was practically a disclaimer of any interest in the controversy. Replications were filed, which were substantially general denials.

This fully indicates the issues presented upon the trial. The evidence as disclosed by the record is quite voluminous. We shall not undertake to give a detailed statement of the testimony developed at the trial, but will, during the course of the opinion, refer to the controlling facts applicable to the issues presented as developed upon the trial. At the close of the evidence the cause was submitted to the court. Its finding was in favor of the plaintiff and a decree and judgment was accordingly rendered as prayed for in her petition. A timely motion for new trial was filed and by the court taken up and overruled, and from the decree and judgment rendered in this cause the defendants in due

time and proper form prosecuted their appeal to this court, and the record is now before us for review.

## OPINION.

### I.

The first proposition disclosed by the record with which we are confronted is upon the assignment of error predicated upon the action of the court in sustaining a demurrer interposed by the plaintiff and striking out the cross-bill filed by the defendants William and Hattie P. Somerville.  In our opinion the action of the court respecting this cross-bill was manifestly proper and the correctness of its conclusion is emphasized when we come to make a careful analysis of the pleadings.  Plaintiff's petition in this proceeding is quite voluminous and improperly contains by way of recitation much of the evidence relied upon to sustain the cause of action alleged; but it is clear that in its last analysis it is simply a bill in equity to cancel certain conveyances on the ground of fraud, to the end that any and all clouds upon the paper title of the plaintiff may be removed.  The petition in this cause is only applicable to the property situated on Washington avenue.  The two defendants filing this cross-bill expressly admit that they have no interest in this property and even in their cross-bill they ask that the title be found to be in Benigna B. Kalb.  If upon no other ground, this disclaimer of any interest in the property involved in this suit furnished to the trial court a good and sufficient reason for its action in sustaining the demurrer to the cross-bill.

The provisions of section 605, Revised Statutes 1899, which is made the basis of the right to file counterclaims and cross-bills and any other defenses the defendant may have to the cause of action alleged, whether they be denominated legal or equitable, by

no means contemplates that a defendant upon being sued, may, on the one hand, disclaim any interest in the subject-matter of the suit, and on the other hand undertake to inject into the proceeding, by way of cross-bill or otherwise, an entirely new cause of action predicated upon a subject entirely foreign to the one upon which the plaintiff's cause of action is based. This, in our opinion, is a sufficient answer to the contention of appellant upon this proposition, and we do not deem it essential to discuss the question as to what can be properly pleaded by way of defense or counterclaim under the provisions of section 605.

There is another substantial, valid and sufficient reason fully justifying the action of the trial court in sustaining the demurrer to the cross-bill of the defendants Somervilles, that is, that the facts alleged in the cross-bill and which are made the basis for the relief sought, relate to matters arising from the acts of Hellman or his attorney or agent or his legal representative. While it may be said that the doing of these acts may have imposed a liability upon Hellman or his estate, but by no means would such burden fall upon this plaintiff who is simply a beneficiary under the will and as applicable to the transaction pleaded in the cross-bill a third and independent party in no wise connected with the transactions upon which the cross-bill is predicated. If the glass company stock was wrongfully converted by Hellman or his trustee, this plaintiff should not be held liable, but the liability was upon Hellman or Hellman's estate. The same may be said as to the agreements alleged to have been made by the attorneys and agents of Hellman in the suit for the balance of the $18,500 note, as well as the alleged promises to redeem. Aside from all this, the facts pleaded in the cross-bill have no relation whatever to the subject-matter involved in the case at bar. Again, it may be said that it is clearly mani-

fest that the other defendants have no interest in the subject-matter of the cross-bill and the plaintiff in this cause is only interested as a devisee under the will of Hellman. In other words, we are confronted with a very peculiar situation as to this cross-bill. These two defendants filing the same disclaim any interest whatever in the subject-matter of this suit, yet insist that they should be heard upon a subject-matter in which neither of them has or claims any interest. It therefore logically follows that so far as these two defendants are concerned, they have no need for a cross-bill, because they disclaim any interest in the subject-matter of plaintiff's suit, and the other defendants cannot avail themselves of the cross-bill because they have no interest in the subject-matter embraced in the cross-bill. The action of the court in sustaining the demurrer to the cross-bill was manifestly proper.

## II.

It is next earnestly insisted that the court erred in admitting in evidence certain statements of defendants William Somerville, Hattie P. Somerville, Louisa P. Henderson and Horatio N. Henderson embraced in a deposition taken in the case of Bredell v. Somerville, et al. That case had been tried and judgment rendered. During the progress of that suit depositions were taken in which the defendants above suggested testified, and it was the statements made by such defendants in the depositions which were introduced in evidence in this cause upon the theory that they were admissions of parties to this proceeding.

The record discloses that the court limited the admissions of those declarations as being admissible simply against the respective defendants making them. In other words, that the statements by one of the defendants were not admitted as being evidence against

the other defendants. We are of the opinion that the statements of the respective defendants as embraced in the depositions, particularly when the court limited such statements to the defendants making them, were clearly admissible. The petition in this case charged that each of these several conveyances constituted a step in a scheme and design on the part of the Somervilles to fraudulently place their property beyond the reach of their creditors, and that the several defendants had knowledge of such fraudulent purpose and design and knowingly participated therein. In other words, the petition in effect charged a conspiracy between these defendants to defraud creditors, and the statements introduced in evidence, as embraced in the depositions, in the nature of admissions on the part of certain defendants, tend strongly to sustain the contention of the plaintiff.

Our attention is directed by learned counsel for appellant to the case of Wood v. Carpenter, 166 Mo. 465, as being adverse to the admission of such testimony. An examination of that case will clearly demonstrate that it has no application to the case at bar. The difference between cases where a conspiracy to hinder, delay and defraud creditors is in issue and in cases where such conspiracy is not in issue was fully recognized in that case. It was there said that there was an absolute failure of proof of any conspiracy or of any improper act or influence of one of the parties to that suit in procuring a will, and it was held that even if it was a conspiracy case, the foundation for the admission of the testimony sought to be introduced had not been laid. It was also pointed out that there was no allegation of conspiracy as to certain parties to that suit; hence it is apparent that this court in that case was not dealing with a conspiracy case.

The law applicable to the subject of conspiracy or combination to do some unlawful act may thus be

briefly stated. In 16 Cyc., page 982, the rule applicable to this subject is announced in this language: "Existence of a conspiracy, combination, or common design may establish a relation of agency so as to make the statements of one party competent against the others concerned, provided such statements are made within the scope of the common enterprise."

In Mosby v. Commission Co.; 91 Mo. App. l. c. 507, Judge SMITH, speaking for that court, in discussing this subject, said: "The essence of a conspiracy is a concert or combination to defraud, which results in damage to the party defrauded. The law treats the case among conspirators as a virtual agency of a limited nature, arising ex maleficio; and, hence, upon the charge of a combination to defraud, the declarations of each of the parties to such combination relating thereto, are evidence against the others, though made in the absence of the latter. But the party must, as a rule, first prove the fraudulent combination to deceive and defraud him. Slight evidence of collusion or concert will suffice to let in the declaration of one of the parties as evidence against all. But there must be some evidence of the combination. This may be inferred from the relation of the parties and the circumstances surrounding them. [Bigelow on Fraud, sec. 6; Moncreiff on Fraud and Misrep., 255.]"

To the same effect is State ex rel. v. Durant, 53 Mo. App. l. c. 500, where it is said: "The general rule undoubtedly is that the declarations or admissions of the vendor subsequent to the sale are not evidence against the vendee, unless made in his presence. This rule, however, ought not to prevail here, for the reason that there was independent evidence tending directly to prove a conspiracy or combination between Bush and Redmon to place the corn beyond the reach of the defendant's execution. This, under a well-recognized exception to the rule, made the declarations of

Bush in furtherance of the conspiracy or in aid of its fulfillment, competent evidence against the relator, whether he was present or not. [Wait on Fraudulent Conveyances, sec. 280; 1 Greenleaf on Evidence, sec. 111; Jones v. Simpson, 116 U. S. 609; Cuyler v. McCartney, 40 N. Y. 221; Spies v. People, 10 West. Rep. 701; Meredith v. Wilkinson, 31 Mo. App. 1; Zeliff v. Schuster, 31 Mo. App. 493.]''

We have carefully considered in detail the disclosures of the record as to the conduct of these defendants concerning the efforts of the Somervilles to hinder and delay their creditors and it cannot be successfully denied that there are many circumstances disclosed by the record which tend to show that there was such a course of conduct between the several defendants as to clearly indicate that they were acting in concert to assist the defendants in hindering, delaying and defrauding their creditors. This being true and it appearing from testimony disclosed by the record, outside of the admissions of the parties defendants as embraced in the depositions, that they were acting in concert, the statements of the respective defendants might have been admitted even without the limitations placed upon such statements by the court as against all of the defendants.

After a careful consideration of all the testimony disclosed by the record, we have reached the conclusion that the statements made by the respective defendants embraced in the depositions, were properly admitted in evidence, and the court had the right to consider such statements in arriving at its final conclusion in this cause.

### III.

This brings us to the only remaining vital proposition involved in this proceeding, that is, whether the

facts developed at the trial were sufficient to sustain the decree of the trial court wherein it was decreed that the several deeds and conveyances be cancelled and for naught held.

In our opinion no one can, after a careful consideration of all the facts and circumstances disclosed by the record, reach any other conclusion than the one reached by the chancellor in the court below. It is not out of place to here recite some of the controlling facts which go to emphasize the correctness of the conclusion reached by the trial court. In January, 1895, William Somerville acquired and held the legal title to the property in dispute. In October of the same year, 1895, he borrowed $18,500 from John A. Sickfort, for which a note was executed, bearing interest at the rate of six per cent, payable semiannually. In December, 1897, Mr. Somerville, as the testimony fully shows, was largely indebted. He then deeds the property to his wife, for the reason stated that it was bought with her money and should have been deeded to her in the first place. It is hardly a disputed question that Somerville was insolvent as early as January, 1899. The $18,500 note signed by Hattie P. Somerville, as well as William Somerville, became due early in 1900. During the latter part of the year of 1900 suit was brought upon that note. A short time prior to the rendition of judgment upon that note, which was on May 6, 1901, Hattie P. Somerville and husband deeded the property to Laura P. Henderson, a sister of Mrs. Somerville. The only reason assigned for that transaction was that Mrs. Somerville had received from her mother more advancements than the other girls, Mrs. Henderson and Miss Pullis. This deed was executed to Mrs. Henderson to equalize them. It will be noted that the mother of Mrs. Somerville and Mrs. Henderson was still living at the time of the execution of this last deed, and it is somewhat

significant that they were dealing with the subject of advancements, which are ordinarily considered after the death of a party in the settlement between the children of the testator. Doubtless the chancellor presiding in the trial of this cause at least thought that perhaps the subsisting judgment upon the $18,500 note had something to do with the transaction in the conveyance from Mrs. Somerville to her sister, Mrs. Henderson. On May 29, 1901, Laura P. Henderson and husband, Horatio N. Henderson, deeded the property to an immediate friend of Henderson for an alleged consideration of $16,000. This friend, Benigna G. Kalb, and her husband, it is alleged, gave a deed of trust back to secure an alleged balance of $11,000, payable in four equal installments, due in one, two, three and four years. This deed of trust by Mrs. Kalb and her husband was not acknowledged until January 9, 1904, and an expert witness testifying in this cause, upon a careful inspection and examination of the deed of trust, gave it as his opinion at the trial, which was at the December term, 1904, of the circuit court of the city of St. Louis, that said deed of trust had been written within the last year. It was also shown by the evidence that the deed to Mrs. Kalb had been written by William Somerville. In June, 1901, the Hendersons gave a note to the Fidelity & Deposit Company of Maryland for $5,412.11, due in eight months. Judgment was obtained on this note for $5,289.59, in February, 1904, and doubtless the chancellor in reaching his final conclusion in this cause thought that the pendency of that suit had at least something to do with the acknowledgment and recording of the alleged deed of trust. The record further discloses that Mr. Somerville, although present in court, did not testify. It also appears that the two Kalbs, whose title was being attacked by this proceeding, although parties to the suit and properly brought into court by service of

process, were not present at the trial and did not testify. Mr. Henderson was a witness and in testifying concerning Mrs. Kalb, the alleged owner of the property, said:

"Q. You say she's out of town now? A. I don't know. She was expecting to go home when I saw her last; she was getting homesick.

"Q. She is not concerned in this suit at all? A. Well, practically she is. She don't see much chance of making the speculation I promised her.

"Q. Did you have any conversations with her in reference to this suit? A. Yes, sir.

"Q. About what were they? A. That I was keeping the interest paid up on the notes, the time was extended so that it would make the property valuable— the security valuable, until this suit was decided. If favorable to us, we would sell and recoup Mrs. Kalb.

"Q. You would sell and recoup Mrs. Kalb? A. Yes, sir.

"Q. And how much would that be? A. The amount of her investment.

"Q. That is five thousand dollars? A. Yes, sir.

"Q. Is that right? A. Yes, sir."

It further appears that Mrs. Kalb was in the city of St. Louis shortly before this trial, and it was certainly quite pertinent to consider the fact in this equitable proceeding that she failed to give any testimony upon the issues presented in this cause.

We shall not burden this opinion with a further recitation of the facts as developed at the trial. It is sufficient to say that there are many other circumstances disclosed by the record and when all the facts developed at the trial are fully considered it fully warranted the conclusion reached by the trial court and clearly supports the decree and judgment rendered in this cause.

Entertaining the views as herein indicated, and

finding no error in the conclusion reached by the trial court, the decree and judgment should be affirmed, and it is so ordered.

All concur.